UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHR & SIMMONS JEWELRY GROUP, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>GOLD LLC,<br><br>*Defendant.* | Civil Action No. 07 CV 4734<br><br>ECF CASE |

## DECLARATION OF SCOTT RAUCH

I, SCOTT RAUCH, declare as follows:

1. I am President of plaintiff SHR & Simmons Jewelry Group, LLC (hereinafter "Simmons"), a Delaware Limited Liability Company, having an office and a place of business at 462 Seventh Avenue, 7th Floor, New York, NY 10018. I have been associated with Simmons as a principal since December, 2006, and for 3 years prior to that I was the President of The Simmons Jewelry Co., LLC ("TSJC"), Simmons' predecessor in interest. I am fully familiar with the design and merchandising activities of Simmons and TSJC as hereinafter discussed. I submit this declaration in support of Simmons' motion for a preliminary injunction and related relief against defendant Gold LLC.

2. In 2003, TSJC, Simmons' predecessor in interest, was founded by the Rauch family and Russell Simmons, the latter being the moving force behind Def Jam Recordings and Phat Fashions (known for its Phat Farm and Baby Phat clothing brands).

3. Simmons, as well as its predecessor in interest, have been in the business of designing and marketing high quality, "upscale" jewelry items under the SIMMONS JEWELRY CO. brand.

1

4. In 2005, TSJC, Simmons' predecessor in interest, designed a collection of men's jewelry to be sold under the SIMMONS JEWELRY CO. brand. The collection designed by TSJC consisted of bracelets, chains, pendants, rings and diamond earrings for the urban-minded man. The SIMMONS JEWELRY CO. collection combines traditional diamond materials and alternative materials such as rubber and stainless steel. Included in this collection was a design known as "Los Angeles" or "LA". The LA design was created by employees of TSJC who were expressly employed for the purpose of designing and developing innovative new jewelry designs. TSJC's design efforts were carried on at considerable cost and effort, and have resulted in high quality original designs.

5. One of the pieces designed by TSJC embodying the LA design was a bracelet known as the "LA Bracelet". Photographs of the LA Bracelet are attached as Exhibit 1. The SIMMONS JEWELRY CO. brand, including the LA Bracelet, were introduced at the June 2005 JCK Show in Las Vegas, Nevada. TSJC began taking orders for the LA Bracelet shortly after the June 2005 JCK Show concluded.

6. In July 2005, TSJC filed an application with the Copyright Office to register its copyright rights in the LA Bracelet. A copy of the application and the materials submitted with it are attached as Exhibit 2.

7. Among TSJC's earliest sales of the LA Bracelet was a sale on November 2, 2005 to account number 3218. That is the account number for Gordon's, a division of Zales. A screen shot from our computer system showing sales of style number DBG1042DIAT0 (the style number for the LA Bracelet) to Gordon's is attached as Exhibit 3. The screen shot is from the computer system that we regularly use in the ordinary course of our business to record sales.

8. TSJC formally "launched" the SIMMONS JEWELRY CO. brand and the LA design, including the LA Bracelet, during the 2005 Holiday season. As part of those efforts, the LA Bracelet was featured in many publications, such as Lustre and Uptown. Representative samples of such articles featuring the LA Bracelet are attached as Exhibit 4. the LA Bracelet was featured on NBC's "Today Show" and was worn by the entertainer Sean "Puffy" Combs in a video that aired on the music television station MTV.

9. The LA Bracelet has been extremely successful commercially and has been promoted by Simmons at considerable effort and expense. This past Christmas the LA Bracelet was available in 150 different retail locations across the United States.

10. To protect the design and look of the LA design, which is embodied in the LA Bracelet, we filed an application for a U.S. design patent on May 30, 2006. The patent application was filed in the name of Mike So and Asher Hoffman, the inventors and creators of the design. Messrs. So and Hoffman then assigned the application to TJSC.

11. On May 18, 2007, Simmons closed a deal whereby it acquired substantially all of the assets of TJSC, including the aforementioned patent application.

12. On May 29, 2007, Patent No. D543,477 issued to TJSC. By virtue of the aforementioned deal and acquisition, Simmons is the owner of Patent No. D543,477. A copy of Patent No. D543,477 is attached as Exhibit 5.

13. I have been advised that Patent No. D543,477 inadvertently issued with a drawing and figure description that should not have been part of the patent. To correct this error, Simmons' attorneys have already filed a Certificate of Correction with the Patent Office.

14. At the beginning of May 2007, TJSC became aware that Gold LLC was selling bracelets that are substantially similar to the LA design embodied in the LA Bracelet.

In particular, on May 3, 2007 we purchased one at the J.C. Penney located in Elmhurst, New York. Photographs of the infringing Gold LLC bracelet that was purchased at J.C. Penney are attached as Exhibit 6. The infringing Gold LLC bracelet was purchased at a price significantly lower than the price for which the LA Bracelet is offered for sale. It is my understanding that the infringing Gold LLC bracelet is also available for purchase at other retail establishments.

15. After reviewing the infringing bracelet purchased at J.C. Penney, I immediately instructed our prior attorney Peter Berger, Esq. to send a notice letter to Gold LLC, advising them of our rights and our pending patent application. A copy of Mr. Berger's May 14, 2007 letter is attached as Exhibit 7.

16. Mr. Berger sent a second letter to Gold LLC on May 21, 2007. A copy of that letter is attached as Exhibit 8.

17. I am advised that our Mr. Berger did not receive a written response to either letter.

18. Thereafter, I contacted the law firm Gottlieb, Rackman & Reisman, P.C. and asked them to handle the matter. They have informed me that they have had telephone communications with counsel for Gold LLC, requesting that Gold LLC cease its infringing activities. Gold LLC is continuing its infringing activities notwithstanding this request.

19. In view of the upcoming Father's Day holiday, a time of year when consumers are particularly apt to purchase men's jewelry such as the LA Bracelet (which is available in approximately 300 different retail locations across the United States), I instructed our attorneys to file this action and seek immediate injunctive relief in order to halt Gold LLC's infringing activities.

20. I have compared defendant's infringing bracelet with our patented design,

and conclude that the defendant's bracelet is substantially similar to our patented design.

21. Defendant's sales of its infringing bracelet will cause irreparable harm to the SIMMONS JEWELRY CO. brand and the LA Bracelet since one reason consumers purchase SIMMONS JEWELRY CO. branded jewelry products is the cache associated with Mr. Simmons. Thus, if we are not given this Court's immediate relief from the defendant's infringement, our company may lose and never recoup the value of this style–the LA Bracelet will no longer have the same appeal because it will not be associated exclusively with Mr. Simmons or the SIMMONS JEWELRY CO. brand. Moreover, the fact that the infringing bracelet is being sold for less than the LA Bracelet undermines the integrity, value and perception of the entire SIMMONS JEWELRY CO. brand.

22. Simmons is also requesting that Gold LLC be ordered to recall its infringing product so as to minimize the harm Simmons will suffer as a result of Gold LLC's sale of its infringing bracelet. The recall should be from Gold LLC's sales force who may be showing the infringing products throughout the United States as well as from customers (including retail stores) of Gold LLC selling the infringing bracelet prior to Father's Day. The sale of the infringing bracelet immediately prior to Father's Day will magnify the irreparable injury to Simmons' reputation.

23. In summary, the existence of Gold LLC's "knock-off" in the marketplace, which is substantially similar to the patented design of Simmons' LA Bracelet, is bound to damage Simmons' reputation and goodwill, cause us to lose sales now and in the future, and otherwise injure Simmons's earned reputation as a jewelry design creator and as the first identifiable jewelry brand in mall stores. For these reasons, defendant's activities should be immediately stopped and they should be ordered to recall their infringing product.

24. The relief requested herein has not been previously requested.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable as perjury under the laws of the United States and may result in a fine or imprisonment, or both.

Dated: June 7, 2007

_____
Scott Rauch

6

**EXHIBIT "1"**







